IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **VIRGINIA R. KELLER CORLEY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action Number |
| vs. ) | **6:11-cv-2807-AKK** |
| ) | |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Virginia R. Keller Corley ("Corley") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Corley filed her application for Title XVI Supplemental Security Income on

June 4, 2008, alleging a disability onset date of September 15, 2007, due to diabetes, asthma, and scoliosis. (R. 109-111, 153). After the SSA denied her application on September 6, 2008, Corley requested a hearing, (R. 62, 74). At the time of the hearing on April 22, 2010, Corley was 40 years old, had a high school diploma, and past relevant work that included semi-skilled, heavy work as a nursing assistant. (R. 23, 33, 49, 55). Corley has not engaged in substantial gainful activity since June 4, 2008. (R. 18).

The ALJ denied Corley's claim on June 22, 2010, (R. 25), which became the final decision of the Commissioner when the Appeals Council refused to grant review on July 9, 2011, (R. 1-5). Corley then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ determined initially that Corley had not engaged in substantial gainful activity since her alleged onset date and therefore met Step One. (R. 18). Next, the ALJ acknowledged that Corley's severe impairments of diabetes, diabetic neuropathy, chronic diarrhea, depression, anxiety, chronic obstructive pulmonary disease, scoliosis, hypoglycemia, arthritis, and hypertension met Step Two. (R. 22). The ALJ then proceeded to Step Three where he found that Corley "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." *Id*. Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Corley

> has the residual functional capacity [RFC] to perform sedentary work [ ] except that the claimant can only occasionally climb ramps and stairs; is precluded from climbing ladders, ropes, and scaffolds; can only occasionally stoop, kneel, crouch, and crawl; should avoid exposure to extreme heat, unprotected heights, hazardous machinery, and environmental irritants such as fumes, gas, and dust; and should be restricted to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements and with few, and only gradually introduced, changes in the workplace.

(R. 19). In light of Corley's RFC, the ALJ held that Corley was "unable to

perform any past relevant work." (R. 23). The ALJ then moved to Step Five where he considered Corley's age, education, experience, and RFC, and determined that "jobs . . . exist in significant numbers in the national economy that [Corley] can perform." (R. 24). As a result, the ALJ answered Step Five in the negative and found that Corley is not disabled. (R. 24-25); *see also McDaniel*, 800 F.2d at 1030.

## V. Analysis

Corley asserts that the ALJ committed reversible error by (1) failing to consider the medical records fully, (2) focusing improperly on Corley's drug dependence, and (3) failing to base Corley's RFC on a medical expert opinion or medical source opinion. Doc. 8 at 5-9. For the reasons stated below, this court finds that the ALJ's opinion is supported by substantial evidence.

*A.    The ALJ properly considered Corley's medical records.*

Corley's contention that the ALJ failed to properly consider all the medical evidence is related to Corley's hospital admissions on May 10, 2008, June 15, 2008, April 10, 2009, and October 1, 2009. Doc. 8 at 5-7. A review of the record shows that on May 10, 2008, Corley visited Walker Baptist Medical Center's ("Walker Baptist") emergency department for "perineal weakness, generalized weakness, [and] failure to thrive." (R. 190). The treating physician noted that

despite a diabetes diagnosis eight years earlier, Corley was not on "any specific therapy," "ha[d] not been taking care of herself until recently," had significant weight loss (went from 213 pounds to 82 pounds), and experienced diarrhea, some dysuria, painful bowel movements, high blood sugars, and a non-productive cough. *Id*. The physician diagnosed Corley with a urinary tract infection, multiple carbuncles, oral and vaginal candidiasis, diabetes, elevated bilirubin, diarrhea, and severe protein calorie malnutrition, and treated her with oral diabetes medication, IV antibiotics, IV Diflucan (to treat candidiasis), and nutritional supplements. (R. 191).

    The full extent of Corley's contention regarding this hospitalization is that the ALJ erred by reporting "only the diagnoses of admission," doc. 8 at 5, i.e. urinary tract infection and skin abscesses, and that the ALJ failed to consider the discharge diagnoses. The record belies Corely's contention. Specifically, the ALJ outlined Corley's pre-admission history (i.e. that Corley sought treatment for a urinary tract infection, multiple skin abscesses, and diabetes at the Hope Clinic one month earlier) and noted that Corley was discharged with "diagnoses of hyponatremia, secondary to hyperglycemia; diabetes mellitus type 2; significantly uncontrolled urinary tract infection; pneumonia; skin abscesses; candida vaginal and oral; diarrhea; and leg edema secondary to malnutrition." (R. 22). Therefore,

Corley failed to meet her burden as it relates to her contention about the May 10, 2008 hospital admission.

Corley challenges next the ALJ's findings related to her June 15, 2008 admission at Walker Baptist for abdominal pain, nausea, vomiting, and diarrhea. (R. 227).  The physician preliminarily diagnosed Corley with "abdominal pain, possible ileus, versus obstruction, versus gastroenteritis," to be confirmed by a surgical evaluation, dehydration, and uncontrolled diabetes.  (R. 228).  The physician treated Corley with IV fluids, Vancomycin for clostridium difficile, and Accu-Cheks to monitor her diabetes.  *Id*.  As it relates to this visit, Corley contends that the ALJ erred by reporting only that Corley complained of abdominal pain and that she needed to comply with her diet and diabetes insulin treatment.  Doc. 8 at 5.  Presumably, Corley contends that the ALJ would have found her disabled had the ALJ included Corley's complaints of nausea, vomiting, and diarrhea, and preliminary diagnosis of possible obstruction and gastroenteritis. However, Corley failed to explain how the omitted information is relevant to her disability determination.  Moreover, it made sense for the ALJ to report only the abdominal pain diagnosis rather than the other unconfirmed "possible" causes the treating physician listed.  In short, the ALJ committed no error in his assessment of the June 15, 2008 hospital admission.

The next hospital admission Corley challenges occurred on April 10, 2009, when Corley presented again to Walker Baptist with diabetic ketoacidosis that "appeared" caused by her "failure to take [her] basil insulin in the setting of oral pain." (R. 359). The hospital treated Corley with IV fluid hydration, IV glucose, and an insulin drip, diagnosed Corley with diabetes mellitus and diarrhea with "profound weight loss," and discharged her in fair condition. (R. 359-360). Corley asserts that the ALJ "neglected to add that the failure to take the basal insulin was in the setting of oral pain having undergone tooth extraction the day before" and failed to describe Corley's weight loss as "profound." Doc. 8 at 6. However, Corley failed to explain how pain from a tooth extraction rendered her incapable of taking her insulin. Moreover, regardless of the reason, the ALJ's basic premise that Corley failed to take her insulin is correct and while the ALJ failed to include the "profound" description, the ALJ reported that Corley's "weight loss over the prior two years was noted" and referenced Corley's "malnutrition" diagnosis from the May 10, 2008, and October 9, 2008, hospital admissions. (R. 22). In other words, contrary to Corley's contentions, the ALJ properly considered Corley's weight loss.

Finally, Corley challenges the ALJ's consideration of the medical records related to October 1, 2009, when Corley returned to Walker Baptist's emergency

room with suicidal thoughts and depression. (R. 440). Walker Baptist admitted Corley to its Behavior Medicine Unit, which diagnosed Corley with major depressive disorder, recurrent generalized anxiety, opioid abuse, history of eating disorder, diabetes mellitus, diabetic neuropathy, migraines, scoliosis, anorexia nervosa, recurrent diarrhea, and abdominal pain. (R. 447-448). Corley had an intake Global Assessment of Functioning ("GAF") score of 30 and a discharge score of approximately 40-45. (R. 440, 444).[1] The treating physician noted that Corley's "main concern was detox from the substances that she had been abusing prior to admission," (R. 445), and treated Corley with opiate withdrawal medications, insulin, Neurontin, Celexa, and BuSpar, (R. 448).

Regarding her October 1, 2009 admission, Corley asserts first that the ALJ failed to mention her GAF score. Doc. 8 at 6. There is no error because the ALJ noted Corley's diagnosis of major depressive disorder and recurrent anxiety, (R. 22), and that the discharge summary described Corley as "no longer suicidal," (R. 445), as evidenced by the increase in GAF score from 30 to 40-45. Corley

---

[1] The Global Assessment of Functioning ("GAF") Scales are used to score the severity of psychiatric illnesses. A GAF score of 30 indicates behavior influenced by delusions or hallucinations or serious impairment in communication or judgement or inability to function in almost all areas. A GAF score of 40-45 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

contends next that the ALJ failed to mention her anorexia nervosa diagnosis. In actuality, the ALJ acknowledged Corley's "history of [an] eating disorder," (R. 22), and noted Corley's malnutrition at least twice in his decision. Finally, Corley asserts that the ALJ erred by failing to mention her discharge medications. Doc. 8 at 6. While true, Corley offers no explanation regarding the relevancy of this omission to the disability determination. Moreover, Corley's medications are only one factor the ALJ considers to make a disability determination. *Ellison v. Barnhart*, 355 F. 3d 1272, 1275 (11th Cir. 2003) ("[T]he ALJ's consideration of [the claimant's] noncompliance as a factor in discrediting [the claimant's] allegations of disability is adequately supported" by the physician's opinion that the claimant's frequent seizures are most likely due to his non-compliance.). Furthermore, given Corley's history of non-compliance with her medications, (R. 192, 228, 359), she can hardly claim credibly that the prescriptions establish that she is disabled. *McCloud v. Barnhart*, 166 F. App'x 410, 417-18 (11th Cir. 2006) ("Given [the claimant's] non-compliance . . ., the ALJ properly concluded that the medical evidence refuted [the claimant's] complaints."). Therefore, the ALJ properly considered the evidence as it relates to Corley's hospitalizations.[2]

---

[2]Corley disagrees with the ALJ's description of Corley's hospital records as weak, and the ALJ's "focus on [Corley's] drug dependence" and non compliance. Doc. 8 at 7. These arguments are unpersuasive. Regarding the hospital records, the ALJ stated that "even if the

B.      *The ALJ did not err in failing to order a medical source opinion.*

Finally, Corley contends that the ALJ erred by failing to order a medical source opinion, medical expert opinion, or consultative examination. Doc. 8 at 8-9. However, the ALJ is not required to order additional medical opinion when, as here, the record contains sufficient evidence for the ALJ to make a disability determination. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted). Moreover, Corley's well-documented non-compliance with her medication, (R. 192, 228, 359), undermines her contention. After all, the ALJ does not need another opinion to conclude that Corley's failure to take her medication is detrimental to her treatment. Finally, the court notes that, ultimately, Corley has the burden of proving that she is disabled. *See* 20 C.F.R. § 416.912(c). Ultimately, unfortunately for Corley, the over 200 pages of medical records she submitted do not establish that she is disabled. Therefore, the court finds that the ALJ's decision to utilize this extensive record and not obtain additional medical opinions is supported by substantial evidence.

## VI. Conclusion

---

claimant's daily activities are truly as limited as alleged, it is difficult t[o] attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the *relatively* weak medical evidence and other factors discussed in this decision." (R. 21-22). Second, Corley's drug dependence is a part of the record and the ALJ can consider all of the evidence submitted. *See* 20 C.F.R. § 416.912(b).

Based on the foregoing, the court concludes that the ALJ's determination that Corley is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 14th day of September, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE